IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 21-cr-00006-RM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    **EPSILON DATA MANAGEMENT, LLC,**

    Defendant.

---

### JOINT NOTICE OF AGREEMENT AND MOTION FOR DEFERRAL OF PROSECUTION

---

The United States of America, through undersigned counsel, and defendant Epsilon Data Management, LLC ("Epsilon"), through its undersigned counsel, jointly move the Court for entry of an order deferring for 30 months all proceedings in this case, including arraignment, and excluding for 30 months the time within which any trial must be commenced upon the charge contained in the Information filed against the defendant.  The parties make this request consistent with their negotiated Deferred Prosecution Agreement (the "Agreement," which is attached as Exhibit 1) and pursuant to Title 18, United States Code, Section 3161(h)(2) of the Speedy Trial Act. Contemporaneous with this motion, the United States has also filed for the Court's consideration a Notice of Related Case and Motion for Alternative Victim Notification.

### Legal Background

A deferred prosecution agreement (DPA) is an agreement between the government and a defendant, in which the defendant is criminally charged, accepts and

1

acknowledges responsibility for its actions, and agrees to undertake and complete certain obligations imposed by the government, such as payment of monetary penalties, remediation, compliance, and cooperation with the government's ongoing investigation. *See, e.g.*, *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 129 (2d Cir. 2017).  In turn, the government agrees to recommend to the court that any prosecution of the defendant on the filed criminal charge be deferred and eventually dismissed if the defendant fully complies with its obligations.  *Id.*  If the government later determines that the defendant has breached a DPA, the government may pursue prosecution.  *Id.*

The parties to a DPA typically recommend deferral of prosecution of a filed Information through a joint motion to defer the prosecution for the duration of the agreement.  Several recent examples include motions filed in the following cases: Joint Mot. for Ord. Deferring Further Proceedings and Excluding Time Pursuant to Speedy Trial Act, ECF No. 24, *United States v. Mizrahi-Tefahot Bank, LTD., et al.*, No. 2:19-cr-150 (C.D. Cal. Mar. 19, 2019); Mot. for Deferral of Prosecution, ECF No. 4, *United States v. Tower Research Capital LLC*, No. 4:19-cr-00819 (S.D. Tex. Nov. 6, 2019); Joint Mot. for Deferral of Prosecution, ECF No. 5, *United States v. Heritage Pharm. Inc.*, No. 2:19-cr-00316 (E.D. Pa. June 11, 2019); Joint Mot. for Approval of Deferred Prosecution Agreement and Exclusion of Time Under the Speedy Trial Act*,* ECF No. 3, *United States v. Lumber Liquidators Holdings, Inc.*, No. 3:19-cr-00052 (E.D. Va. Mar. 12, 2019).  Although variously captioned, these motions all request that the respective courts extend the time for trial under the Speedy Trial Act and suspend all proceedings until the relevant DPA term expires.

As in the matters listed above, courts usually consider and rule on parties' request to defer a prosecution consistent with a DPA before any plea is entered in the case. This procedure follows from the nature of a DPA, where a defendant admits to facts sufficient to convict on the criminal charge alleged in an Information but does not face trial and conviction unless the DPA is terminated by the government and prosecution on the criminal charge is pursued. Indeed, requiring a plea would place a defendant in an untenable position—a not-guilty plea would be inconsistent with the defendant's admission of facts as part of the DPA, while a guilty plea would be inconsistent with the bargain struck in the DPA to defer disposition of a criminal charge pending the defendant's compliance with the DPA's terms.

Although there are few published cases examining the federal judiciary's role in approving DPAs, appellate precedents agree that the courts' specific role is to consider whether the request for a Speedy Trial Act extension and deferral of proceedings is for the purpose of allowing the defendant to exhibit good conduct. *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 129 (2d Cir. 2017) ("Absent unusual circumstances not present here, a district court's role vis-à-vis a DPA is limited to arraigning the defendant, granting a speedy trial waiver if the DPA does not represent an improper attempt to circumvent the speedy trial clock, and adjudicating motions or disputes as they arise."); *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 740-747 (D.C. Cir. 2016) (noting the district court's decision, which was reversed, was the "first time any federal court ha[d] denied a joint request by the parties to exclude time pursuant to a DPA").

The Speedy Trial Act excludes any time where "prosecution is deferred by the attorney for the Government pursuant to written agreement with the defendant, with the

approval of the court, for the purpose of allowing the defendant to demonstrate his good conduct." 18 U.S.C. 3161(h)(2).  The statutory language ties the "approval of the court" to the purpose of demonstrating good conduct.  *See Fokker Servs. B.V.*, 818 F.3d at 741.  The court's limited role in this context is consistent with the broad discretion prosecutors have to determine whether and when to pursue criminal proceedings.[1]  *See e.g.*, *United States v. Batchelder*, 442 U.S. 114, 124 (1979).

A DPA requiring a defendant to cooperate, remediate, and implement compliance measures meets the standard for a Speedy Trial Act time exclusion, *see HSBC Bank*, 863 F.3d at 130; *accord United States v. Clem*, 422 F. Supp. 3d 1105, 1116 (N.D.W. Va. 2019), and a court may deny a request to exclude time only if it finds the underlying DPA contains illegal or unethical provisions.  *See Fokker Servs. B.V.*, 818 F.3d at 747 (citing *United States v. Saena Tech Corp.*, 140 F. Supp. 3d 11, 30 (D.D.C. Oct. 21, 2015)); *HSBC Bank,* No. 12-CR-763, 2013 WL 3306161, at *7 (E.D.N.Y. July 1, 2013) (*rev'd United States v. HSBC Bank USA, N.A.*, 863 F.3d 125 (2d Cir. 2017)); *see also Clem*, 422 F. Supp. 3d at 1116.  In conducting this analysis, "'[t]he presumption of regularity supports' . . . prosecutorial decisions and, 'in the absence of clear evidence to the contrary, courts presume that [recommending prosecutors] have properly discharged their official duties.'"  *United States v. Armstrong,* 517 U.S. 456, 464 (1996) (quoting *United States v. Chem. Found., Inc.,* 272 U.S. 1, 14–15 (1926)).

---

[1] As the Supreme Court has stated, "[s]uch factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake."  *Wayte v. United States*, 470 U.S. 598, 607 (1985).

Argument

The Agreement, *see* Exhibit 1, entered into between the United States and Epsilon on January 15, 2021, sets forth robust terms that will allow Epsilon to demonstrate its good conduct over the 30-month term of the Agreement. The Agreement was reached following a years-long investigation in which Epsilon offered exceptional cooperation, and it contains both a meaningful admission of facts and requirements that Epsilon continue to cooperate, remediate, and implement appropriate compliance measures. As a result, the Agreement amply satisfies the requirements sufficient to support the parties' joint request to defer proceedings and exclude time under the Speedy Trial Act for the duration of the Agreement's term.

In particular, the Agreement requires Epsilon to admit relevant facts and accept responsibility through a statement of facts to which both Epsilon and the United States have agreed. That statement of facts acknowledges the conduct giving rise to this case. Exhibit 1 (Agreement), Attch. B. To date, one individual has been prosecuted in relation to that conduct. *See United States v. Kessler*, No. 18-CR-435 (D. Colo.).

The Agreement also notably requires Epsilon, *inter alia*, to implement a corporate compliance program, report on its compliance to the government, cooperate with ongoing government investigations, and pay victim compensation and penalties totaling $150,000,000. Agreement ¶¶ 2, 5, 7, 20, 21. The victim compensation amount will be administered by a third-party claim administrator, which will report directly to the United States, and for which Epsilon will bear the costs of administration. *Id.* ¶ 14. Through this arrangement—and based on significant information analysis performed by Epsilon and the United States—many victims of mass-mailing fraud schemes to which Epsilon

5

sold data should receive compensation.  Because many of those victims are of advanced age, the timely provision of compensation under the arrangement is especially significant.

In consideration of Epsilon's commitments under the Agreement, the United States agrees to defer prosecution for 30 months and to dismiss the criminal charge with prejudice at the end of the term, assuming Epsilon has not breached the Agreement.  *Id.* ¶ 3.  The United States retains sole discretion to determine whether Epsilon has breached the Agreement, including whether to prosecute or to impose stipulated damages of $10,000 per day for compliance implementation failures.  *Id.* ¶¶ 24-28.  Collectively, these and other terms of the Agreement will allow for Epsilon to demonstrate its good conduct over the term of the Agreement, with significant consequences for a failure to do so.

Wherefore, for the reasons stated herein, the parties jointly request that the Court:

(1) Order that 30 months from the date of this Motion be excluded from the Speedy Trial Act to allow the defendant the opportunity to fulfill its obligations under the Agreement;

(2) Stay all proceedings and deadlines for 30 months from the date of this Motion; and

(3) Order that the parties file a status report no later than 30 days prior to the conclusion of the Agreement, along with any additional reports requested by the Court.

The parties further note they are not seeking a hearing on this matter but are available at the Court's convenience should the Court determine that a hearing is necessary.

Respectfully submitted this 19th day of January, 2021.

EPSILON DATA MANAGEMENT, LLC

By: __/s/ Shawn Cleveland_____
Shawn Cleveland, Esq.
BakerHostetler
2850 North Harwood Street | Suite 1100
Dallas, TX 75201-1735
(214) 210-1210
scleveland@bakerlaw.com

JASON R. DUNN
United States Attorney

By: __/s/ Hetal J. Doshi_____
Hetal J. Doshi
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
(303) 454-0103 (Doshi)
Hetal.Doshi@usdoj.gov
Attorney for the United States

GUSTAV W. EYLER
Director
Consumer Protection Branch
U.S. Department of Justice

By: __/s/ Alistair Reader_____
Alistair F. A. Reader
Ehren Reynolds
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
450 5th Street, NW, Suite 6400
Washington, DC 20530
(202) 353-9930 (Reader)
(202) 598-8339 (Reynolds)
Alistair.F.Reader@usdoj.gov
Ehren.Reynolds@usdoj.gov
Attorneys for the United States

**CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2021, I filed the foregoing **JOINT NOTICE OF AGREEMENT AND MOTION FOR DEFERRAL OF PROSECUTION** with the Clerk of the Court through CM/ECF, which will send notification of such filing to all counsel of record.

_/s/ Hetal J. Doshi_
HETAL J. DOSHI
Assistant United States Attorney